May it please the Court, I'm Andrew Vasquez, jury at law for Petitioner. On behalf of Michael Cabretta, who was on the brief, I would like to reserve five minutes for rebuttal. Your Honor, this case comes down to this. Was it an equal protection violation when the petitioner was not allowed to derive citizenship based on the marital status and the age of the mother at the time of his birth? At the time of the petitioner's birth, the petitioner's mother was 15 years old. She was born in the United States, had lived here all of her life, and had only gone into Mexico for a few months to give birth. Subsequently, after a few months, she returned and had remained for the rest of her life here in the United States. Let me ask you a question. Didn't we resolve this issue in Runnett v. Schultz? Your Honor, the difference between that case and this is that in Runnett, the petitioner's mother didn't even know that she was a citizen until after his birth, and she lived the majority of her life in Canada. She was only here intermittently in the United States. I believe it was between 1916 and 1918 she was here, and after that she was completely in Canada. In this case, the petitioner's mother was born in California, stayed here the majority of her life, and was only out for a few months prior to and subsequent to the petitioner's birth. And that circumstance distinguishes this case from Runnett? I believe it does in that she had the 10 years, which is one of the requisites under the statute to show that she is an American citizen, that she has an American identity. And the difference with Runnett is that she was Canadian. She only lived here for two years. By the way, how does Mr. Rick, the son, have standing to raise an equal protection violation? Well, he has standing in that... For his mother. I believe there's actually two separate arguments in that, in that he has standing because he was not allowed to derive citizenship. She would have standing because she was not allowed to confer citizenship. No, but she's not a party here. She's not a party here. As Mr. Carrillo had argued in the brief, that she is, her rights are being violated here in that she was not allowed to confer citizenship status to her. She's still not a party here. The question is, does your client, the son, have standing? And you say he has standing because... He's not allowed to derive citizenship based on where and when his mother gave birth. So assuming that he has standing to make the claims as to his own impediment that derives from the rule that affects his mother, what's your argument then as to Runnett not applying? It's because as applied to him, he's the product of a union that was essentially United States in character, at least if you look at his mother. If they went across the border to have the baby, him, then she, did the father come back across the border as well, or do we know that? The father was a lawful permanent resident, and he, yes, left. That doesn't answer the, he's still a citizen of Mexico. If he were a citizen, he wouldn't have a problem here. But so he was an LPR, went back, so they both, parents went back across the border into the United States, and I didn't say he went illegally. I just want to know if he came back physically. Yes, he did come back. Okay, so they... As far as I know from the information that was given to me. All right. Is that all in the record, or that's just what you know? I believe it is in the record. However, I do not have the certified record of appeal. Before me, I was, I'm a pitch hitter, and I was given the information only a few days ago. That creates a bit of a problem if you're trying to, I'm not sure you can distinguish Runnett on that basis, but if the record doesn't reflect the facts that you're using to distinguish Runnett, that provides us a bit of a problem, doesn't it? Actually, I don't believe it does, because as the law stands, the father is not quite an issue. If he was a United States citizen and the mother had left and they were married, there would still be the issue of the derivative citizenship not passing. No, she didn't stay in the United, in other words, let's just focus on the mother. You're saying the Canadian mother didn't, A, know she was born in the United States? The Canadian mother was actually born in Canada. She derived citizenship herself. All right. Her mother was U.S., but they had dual citizenship, is that it? Yes. Okay, so the mother that the, who was trying to, what was the duration, in other words, of the parent through whom, the mother through whom the claimant in Runnett was attempting to claim citizenship, derivative citizenship? If I understand the question correctly, what is the duration of time that the mother was in the United States? Yes, the mother through whom the petitioner was trying to claim derivative citizenship. She lived in the United States for two years, between 1916 and 1918. Okay. And in this case, you're saying because the mother, in this case, was a U.S. citizen. By birth. By birth. She was Native American, wasn't she? To a Native American as in his ethnic background, I do not know that. She was. She was born here in the state of California in 1952, I believe. All right, so, okay, I'm getting a little confused on the facts myself. But in any event, you're trying to distinguish the case on the fact that the mother was born here and then went back and lived thereafter in the United States, and he lived in the United States with her. That's the distinction between this case and Runnett. Yes. She lived here all of her life, except for those few months when she went to Mexico to give birth, and then subsequent to it, she then returned with her husband and her, actually these were twins, Mr. Rico Ibarra is a twin, they came back and lived for the rest of their lives up until 1996 when unfortunately Mr. Rico Ibarra was deported and he did come back in 2000. But prior to that, from I believe 1967 to that time, he had lived here in the United States. Okay. Counsel, let me bring you back to the question of standing to assert the rights of the mother. You're arguing, as I understand it, that heightened scrutiny should be applied in this equal protection argument because these statutes interfere with the right to procreate and the right to marry. Aren't those clearly rights of the mother? They are clearly rights of the mother. The issue here, I believe, is that a third party can have standing to present the rights of someone outside of the case, as the late V. Reno, subsequently returned by Ashcroft v. Lake. But in that case, the father's rights were being asserted. He was dismissed from the case, but the court did allow the litigant to continue with presenting the rights of the father, even though he was dismissed from the case. And in this case, if I'm not mistaken, a third party's rights can still be submitted to the court if there is a substantial impairment for that person presenting their rights to the court. And in this case, this case comes through the immigration context, where the immigration context, the mother was not before the immigration court. There was no jurisdiction there. It was subsequently appealed to the BIA. There would be no jurisdiction before the BIA, and then subsequently here to the Ninth Circuit. So her opportunity to present her rights to this court would be substantially impaired in that she had no place to have her case heard. Well, she was clearly aware of this because she participated in the proceedings before the immigration judge. Could she have chosen to be a part of this case or brought an action on her own that would allow her to assert her rights? The only thing that I can present to the court is possibly presenting it to the district court and presenting it in that manner going up. But because the case comes through the immigration context, there was no way of her asserting herself into it because there was no jurisdiction over her by the immigration judge and subsequently the BIA and then obviously subsequently here. Well, how do you articulate then his claim? What are his claims? How do you frame his claims? What's the class that he's trying to say he's being treated differently from? His class is that he is within the class of children not allowed to derive citizenship because of the age and marital status of the citizen parent, the citizen mother specifically. If we conclude that he cannot assert the rights of his mother in this action, do you agree that the proper level of scrutiny would be rational basis? I'm hard pressed to say so. However, in this case, I would have to agree that the rational basis would apply. And if rational basis analysis applies, do you agree that there is no equal protection violation? Actually, no. The statute has to have a rational basis as to the intent of that law. And as pointed out by Council for Respondent, when the law was being argued in Congress, they specifically said that a foreign-born child whose citizen parent has not resided in this country as much as 10 years altogether is likely to be more alien than American in character. And in this case, the mother lived here for much more than 10 years. She was only out for a few months between the time prior to the birth and then after. So she is essentially American in character, and therefore also the child is. Where Senator Schwellenbach, also in arguing for the changes in the law, he states that the restriction that they were arguing for at the time would prevent the perpetuation of United States citizenship by citizens born abroad who remain there or who may have been born in the United States but who go abroad as infants and do not return to this country. Well, in arguing for the changes in the law, that does not specifically apply here in this case because she did live here for those 10 years, and she did not go abroad and remain abroad. The child who was born abroad did not remain abroad. He came back and grew up here in the United States. So the rational basis for this to make sure that those persons have an American character and have allegiance to the United States is, well, it's been completed here because this person was born in the United States, had an American character, stayed here prior to the birth for more than 10 years, stayed here after the birth for the rest of her life, and the child was only out for a few months, so growing up was American in character. And therefore, the law, the rational basis for this law has not been completed. Why don't you save the rest of your time? Why don't you let us hear from the government, and then you can respond to that. Thank you, Your Honor. May it please the Court. I install it for the respondent, the U.S. Attorney General. As discussed, the petitioner, a convicted felon who has illegally re-entered into the United States after being removed, seeks to avoid removal with the claim that he is a derivative citizen. Is it true, are the facts of this case essentially this, that the mother who was underage when she got pregnant met and got married to a fellow who was a Mexican national? They went across the border to Tijuana, had the baby, the petitioner here, and then the family came back into the United States. Is that correct? That is the general census before the immigration judge. They had discussions about that. What's in the record, however, is that the alien's mother was born here. She was a U.S. citizen. She's a U.S. citizen. She got married in 1966. She was married at the time. They litigated over whether there was a valid marriage. First, his defense was it was not a valid marriage, that he was illegitimate, right? Right. Because if he'd been illegitimate, then there wouldn't be any problem because his mother would have had sufficient two-year residency. Well, would have had the one year. Right, one year prior. Okay, so basically if he'd been born a bastard, he would be okay today. But because the young couple got married and had him after they were married, he's disabled because his mother didn't have the requisite, what is it, had to be four years after the age of 14. Now, under the current law, that time period has been reduced, hasn't it? To two. So she would have made it under that. No. So she gave birth when she was 15. So she would have been one year short. Right. Do we factor that into the rational basis analysis? Well, Congress has outlined the particular circumstances where someone can derive citizenship, and we can't go beyond that. That's the issue we're debating today. Right. But if the court can't and it's in the province of Congress and not this court. So there can never be an equal protection violation? With respect to the claims raised by the petitioner, no. This court has already considered the constitutionality of the provisions at issue, and they have found no problem with them. As far as the other facts, the record doesn't establish the nationality of the father. There's talk that he is a national of Mexico. Well, he's not a U.S. citizen, apparently. Right. Well, there's no evidence that he is or is not. So it doesn't make any difference. He could be a citizen of Mexico. And as far as the Native American thing, the possibility that he was a descendant of the Native American? No, I don't think he was. I thought it was she was. Well, right. The immigration judge gave them time to investigate whether the mother was Native American, and nothing else became of that. That's not in the record. We don't know whether she was a Native American. Right. That's not in the record. But she clearly was a U.S. citizen. Yes. Okay. And she clearly got married and had the baby. And clearly, if she hadn't gotten married, then he would be okay. Correct. Okay. And that's a rational distinction that Congress has made? Yes. Because? Based on a case involving any comparable facts to that, either that the Congress was focused on or that this Court focused on? There's been no case exactly on point in the exact circumstances of this. There's the Rudnick case, as we've discussed earlier, but I believe it applies. And there's another one for the other participants, and we'll come right off to that. Your A.B.? Sure. But the rational basis is that Congress made these laws to prevent the statelessness of a child. That wouldn't be a problem in this case. That would not be a problem in this case. If the rationale doesn't fit the facts, what do we do with that? Say, as implied, it would be unconstitutional? The petitioner's mom made the affirmative action to move to Mexico. She didn't. She just went down to have the baby. Apparently, according to the record, she went across the border to have the baby and marry. And by so doing, she knew that her son would not be a U.S. citizen. She knew that at 15? Is that in the record? Her knowledge? No. She hasn't asserted any rights in this case. She hasn't submitted any sort of affidavit. She's not the one being deported. Right. And he's now trying to assert the rights of his mother. Well, sure. Why not? I don't. He's the child. He was helpless. But that does not give him standing to sue. Okay, let's assume he doesn't have standing to deal with the rights of the mother. His own rights. He's being treated differently from children born out of wedlock. The same fact pattern. Two girls go across the border, both age 15. One gets married and does the right thing. The couple do the right thing. And the other one, the woman goes across the border and has the baby, and he's born illegitimate. So that child is okay. He's now a U.S. citizen, but this petitioner, born out of a lawful marriage, is not. And the government says that's rational and it prevents him becoming stateless. In fact, what it prevents him from is not being a U.S. citizen. Right. That's rational. Yes. And we should say that our prior case law and law of equal protection doesn't protect him. There's other rationales behind the wedlock thing. It helps protect the rights of the parties, the father, for example. How does it protect the father? If he becomes a U.S. citizen and if he's not a U.S. citizen, he may not have as much rights over the child as he would otherwise. Say that again. It's explained, obviously, better in the brief, the other rational basis for this decision. If that's rational, you should be able to explain it right now. That's a good point. Thank you. It's a tough fact pattern to defend, isn't it? Yes. And where Congress decides to draw the line, it's up to them. So the problem is mainly – Do you think that if this fact pattern were presented to Congress at the time it enacted this legislation, would it have said, oh, yeah, that makes a lot of sense? There's a couple that go ahead and do the right thing, get married, and then come back across the border. But it's okay if they don't get married. Do you think that's what Congress would really have said? No, that's what we intend. We're willing to do that. To create such a test to make – to find all the individual – basically, she decided to leave. And, yes, she may have come back. The record, I'm not sure, firmly establishes that. Well, her children came back. That's obvious. She hasn't asserted the rights of her children. Part of it is whether there's enough to assert the allegiance to the United States. And that's part of the equation. And by his actions – Now you're talking about a fact-intensive inquiry, and that seems to be the troublesome here. The facts seem a little mushy on this issue if we're talking about as applied to the specific facts. But you're assuming that – you're saying, well, now you're questioning whether she has enough allegiance. You're questioning whether they actually came back. I'm not questioning her allegiance. Yes. He was raised in the United States. He didn't leave voluntarily. He violated an order of removal. Well, that's true. After he'd been removed in 1996, he wasn't looking to leave the United States. He could have asserted his rights then. He has the drug offense. Well, that's a different issue. The question is whether he is a United States citizen or not. He does not fit the – He doesn't fit the larger framework. But on the narrow framework of these circumstances, it presents what appears on its face, at least to me – I'm not speaking for the panel. Just looking at the facts, it seems that it doesn't match up with the rationale for the distinction. And, in fact, Congress has reduced the amount of time, residency time, which she still misses given the young age at which she conceived this child. But it doesn't sound as if Congress was happy with the five-year rule, so they cut it back down. I haven't got delved into the legislative history or anything like that. But is it your position that there could be facts, or it doesn't make any difference what the facts are? Once Congress writes a law that fits these facts, even if they don't match up with the rationale, that's the end of the story? The statutes protect children from being stateless. And because of that, there's a rational basis behind how Congress did it. Whether there's any perceived notion that it's not rational, it's not really before the court, but whether the law itself had a rational basis, and it does. That's it. Yes. How does the government propose that the mother raise her rights, her equal protection rights, or any claim she has? What would she do? Well, I'm not sure exactly. She could have at least submitted an affidavit to the immigration. She could have at least submitted an affidavit. Wait, wait, wait. If she had submitted an affidavit, would that have given him standing, the son standing? It would at least give more teeth to the fact that she would be otherwise unavailable to preserve her claim. But in this record, there is no. So she could have submitted an affidavit. That's one way. So how else could she raise her claims? She could have tried to gain citizenship for her children much earlier on. He could have done the adjustment process, and she could have been the petitioning citizen for him to adjust the status. That would have made her party in the action. But there is no. So would you adjust him on the basis that he's a United States citizen? That doesn't make sense. Well, correct. If he's a citizen, yes. But since he doesn't statutorily qualify as a direct citizen, then he would be considered a Mexican nationalist citizen and therefore could have adjusted. By saying there's an equal protection violation and there's nothing we could have done, there is stuff they could have done because he was not a direct citizen under the law. Could she have somehow become a party to this case, in your opinion? And if so, how? I guess it would have to be some kind of creative out-of-the-box notion because she wouldn't be placed in removal proceedings. She's not in removal proceedings. Could she have brought an action in district court in some way? I'd have to look more into that. Well, if we don't know today any avenue by which she could have become a party to a case where she could have asserted her equal protection rights, then does her son have third party standing to assert them in this case? She had, as I say before, she could have been a petitioning, she could have held petition for her child to be a lawful permanent resident. She has not. And any action she can take now is almost as if she has waived her objection, I guess, in a sense. Because waiver implies knowing, understanding of your rights and so on. But there's no finding of waiver here. In any event, you can't, as a member of the Department of Justice, you can't come up with any thought of how she might do it in this particular case. You can. Not in the proceeding that we have. Well, she could, if she filed an I-130 for, if she would, I'm going to have to check to see if she would be eligible to file an I-130 at this time in the removal proceedings. Or even if she could have done it in his prior removal proceedings as well. But you can file a motion to reopen based on an improved I-130 so that he could adjust status and thereby she would have some role in. And that would go through the hardship analysis and all of that, is that it? I believe so, yes. If we conclude that there isn't an apparent way for her to assert her rights and therefore that her son can assert the rights, is this statute constitutional? Doesn't it infringe her fundamental rights to marry and procreate? It's collateral to those rights. It doesn't infringe her right to marry and it doesn't infringe her right to procreate. So I gather, from what you say, that the government's best case here is run it. As inexact as it is to these facts. Is that right? That's basically the government's position? Yes. Okay. Thank you. All right. Counsel? Thank you, Your Honor. Can I please have a court? Go ahead. Your Honor, it would seem that the counsel for the government is a little confused as to how the I-130 process would work in that if the mother was to petition for the son, a motion to reopen could not be done at this time. Specifically after the immigration proceedings are over with, if you have 90 days from the date of the final administrative decision to do that. So she would have no way of doing it now. We're also assuming, as the court has rightly pointed out, that she knew what her rights were. As a 15-year-old giving birth at the time, she probably did not know that she would have... What about over time? In other words, she comes back to the United States. She's raising the twins. She makes no effort to confer her citizenship on the two of them, apparently. Well, as a young mother, I would have to assume that her primary issues in mind would be to raise the children and not to bring up legal rights of which she has no legal training or knowledge. Yeah. So he was picked up and deported in 1996 or 97, is that right? 1996, your Honor. For what reason? I believe it was for a drug conviction. I'm not specific as to... But he was picked up and came under law enforcement attention and it caused him to be removed to Mexico. Yes, Your Honor. And then he comes back across the border. Yes. And he's picked up on a reentry case. Correct. And he's in this proceeding now. Yes. Was the mother involved at all in that first proceeding? I don't believe so. And if memory serves, the first proceeding was fairly quick. There was not an appeal. I'm not even sure if he was represented by counsel at the time. And what was the nature of the drug offense? Your Honor, I'm sorry. I don't have that information for me. All right. Okay, do you have anything else? No, Your Honor. Counsel, a question. If we were to agree with you that one or both of these provisions is unconstitutional and declare them unconstitutional, how does that grant your client citizenship? Well, specifically, as argued in the brief, to take, I believe it is 30187, and to strike out just the part of the five years after the age of 14. Because the first part, the 10 years here in the United States prior to the birth, as pointed out in Uribe Temblador, that lines must be drawn and they have to be drawn somewhere. Well, the 10 years of that previous part of the section is, we believe, a rational implication, and that she did have those 10 years. Now, to strike out the five years after the age of 14 would then allow him to become a citizen. So even though we're distinguishing this case from run it on its facts, you would have us strike out the entirety of the provision, sweeping in all sorts of kinds of people who may have different factual circumstances. Only those who were born between 1952 and 1986, and those who had the 10 years prior to the birth. Only. How many cases are out there like that? I would not be able to tell you. Uribe would be as applied here, not as abroad. Just as applied to her. That's all your argument would be. Basically, yes. On these facts. Yes. Right. Thank you, Your Honors. I yield my time. Okay. All right, thank you. The case argued is submitted.
judges: Fisher, Paez, Campbell